Argued and submitted October 1, 1993, affirmed January 5, petition for review denied March 8, 1994 (318 Or 459)

Alvin Guy SIMPSON,
*Respondent,*

*v.*

Margaret Thompson McCORMMACH
and Richard M. Thompson, individually
and as co-personal representatives of
the Estate of Gladys Evelyn Thompson,
*Appellants.*

(CV-92-539; CA A78429)

866 P2d 489

Robert T. Mautz argued the cause for appellants. With him on the briefs were W. Eugene Hallman and Mautz Hallman Baum & Hostetter.

Jacqueline Haggerty-Foster argued the cause and filed the brief for respondent.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Gladys Evelyn Thompson (Thompson) was the life tenant of certain real property under her late husband's will. She leased the property to a farming concern, which was to grow crops on it and to pay her as rent 40 percent of the crops after they were harvested. Thompson died in 1991, after her lessee had planted the next season's crops but before they were harvested. Plaintiff holds a remainder interest in the property under Thompson's husband's will.[1] He brought this declaratory judgment action against defendants, who are Thompson's personal representatives and heirs, contending that he is entitled to succeed to Thompson's interest in the crops and to the profits from the crops that come due under the lease. Defendants contend that they are entitled to Thompson's interest and the profits under the law of emblements.[2] The trial court entered a declaratory judgment in plaintiff's favor. Defendants appeal, and we affirm.

■■ In general terms, the doctrine of emblements gives farm tenants certain rights in crops planted by them during their leasehold but that remain unharvested at the termination of the tenancy. At common law, and under the decisional or statutory law of most American jurisdictions that have dealt with the question, the holders of life estates enjoy emblement rights against the holders of remainder interests that correspond to some of the rights that tenant farmers have against their landlords. *See Annot.*, 47 ALR3d 784 (1973). As Lord Coke explained:

> "[I]f tenant for life soweth the ground and dieth, his executors shall have the corn, for that his estate was uncertain and determined by the act of God; and the same law is of the lessee for years of the tenant for life." 1 Co Litt 55b.

In Oregon, the emblements doctrine is codified at ORS 91.230:

---

[1] The other remainderman has assigned her interest in the subject of this litigation to plaintiff.

[2] In addition to the crops, there is also a dispute as to which party is entitled to receive federal price support payments. However, neither party argues that the decisive factors in that connection differ from those that govern the right to the interests in the crops.

No party contends that Thompson's lessee is not entitled to emblements.

"When the leasing or occupation is for the purpose of farming or agriculture, the tenant or person in possession shall, after the termination of the lease or occupancy, have free access to the premises to cultivate and harvest or gather any crop or produce of the soil planted or sown by the tenant or person in possession before the service of notice to quit."

The theories that the parties espouse in support of their positions are many and varied. They disagree, for example, about whether the Oregon statute applies at all in the life tenant-remainderman context or, conversely, applies only as a right of tenants against landlords. Similarly, the parties appear also to dispute whether a lessor of farm property can have any emblement rights in crops that her tenant rather than she has caused to be planted. *See Weddle et al. v. Parrish*, 135 Or 345, 349, 295 P 454 (1931).

We note those issues only to emphasize that we need not and do not resolve them. The dispositive factor is that the real dispute in this case is not about *crops*; it is about *rent*. Plaintiff relies on *Williams v. Stander*, 143 Colo 469, 354 P2d 492 (1960), a highly analogous case, in which the Colorado court concluded:

"If a life tenant has leased the land for rents payable by part of the crops to be harvested, and the life tenant dies before the crops are harvested, the rent belongs to the remainderman and not to the estate of the life tenant." 143 Colo at 478.

The *Williams* opinion discussed authority from other jurisdictions that uniformly supports its conclusion. It further noted:

"The importance of the time when the rent becomes due is illustrated by *Grotefendt v. Schlaeppi-Siever* (1919), 213 Ill. App. 436. In that case the testator rented land under an agreement similar to the agreement [in *Williams*]. The testator died while the crop was growing and devised a life estate to his wife and the remainder to his children. Subsequently the crop was put in shock in the field but was not threshed or delivered when the wife died. Nevertheless, the court held that the remaindermen were entitled to the proceeds because the rent was not payable until the wheat was delivered to the elevator. This is exactly the situation in the instant case." 143 Colo at 479.

That is also exactly the situation in this case.

■ We are persuaded by the Colorado Supreme Court's reasoning. The distinction between crops and rent might seem tenuous at first blush, in this situation where the crops *are* the rent. However, the distinction is central to the principal purpose of the emblements doctrine, which is to protect the interests of farmers to harvest crops on land that they planted with the expectation that its bounty would be available to them, but whose possessory rights failed through no fault of their own before the time for harvesting. *See Hostetler v. Eccles*, 112 Or 572, 230 P 549 (1924).

■ Although we do not now decide that a lessor can *never* be sufficiently connected with the lessee's farm operations to come within that purpose, the rationale for the rule fails when, as here, the lessor claiming emblement rights has no cognizable direct connection to the farm operations or the unharvested crops other than the coincidence that the rental that the party's lessee pays takes the form of crops rather than cash.[3] We suggest no improper motive here, but if that coincidence were to achieve the legal significance that defendants would attach to it, the predecessors of the owners of land could readily usurp the latters' right to receive rent as it comes due by agreeing to accept a particular kind of rent from their tenants.

■ We hold that defendants have no emblement or other rights to the crops or the profits from them.

Affirmed.

---

[3] Thompson insured the crop and paid certain expenses in connection with it. Defendants counterclaimed to recover the expenses, and were awarded relief by the judgment. That relief is not an issue in this appeal. In their opening brief, defendants contend that Thompson participated in various ways in farm-related matters. Accepting their description of her involvement, we decide as a matter of law that it did not rise to the level or kind of participation that could affect the conclusion stated in the text.